# WILEY, BANKS & CO. *vs.* KNIGHT ET AL.

[BILL FOR INJUNCTION BY MORTGAGEE AGAINST JUDGMENT CREDITORS OF MORTGAGOR.]

1. *Notice to agent implied from circumstances.*—Complainants, having a large claim, past due, on a mercantile firm then on the eve of insolvency, placed it, for collection or security, in the hands of on attorney at law who resided in the same town with the debtors. The attorney, although he did not know positively that the debtors were in failing circumstances, knew that a mortgage for a large debt covered their property, that there were other demands existing against them, some of which were in his own hands for collection, and for which he had endeavored to obtain collateral security, and that the balance of the notes and accounts due the firm, which had not been transferred to others, was almost worthless; and knowing these facts, he took from them, as the best security he could obtain for his clients, a mortgage on all their property, containing terms very beneficial to the debtors: *Held,* that these circumstances were sufficient to charge him with implied notice of the debtors' insolvency.

2. *Notice to agent is notice to principal.*—If notice, actual or implied, is brought home to an agent or attorney, it is immaterial whether the principal had personal knowledge of the fact; since the principal is presumed, both at law and in equity, to know whatever his agent knows.

3. *Mortgage taken by bona fide creditor, with implied notice of debtor's insolvency, conveying all his property, and containing terms beneficial to him, held fraudulent and void as to other creditors.*—A bona fide creditor, whose debt was past due, and who was charged with implied notice of the insolvency of his debtors, took from them, as the best terms he could obtain for his security, a mortgage on all their property of whatsoever description—to-wit, all their partnership effects, books, notes, and accounts; and all their individual property, consisting of lands and negroes, all the stock and provisions then on hand, or which might afterwards at any time be on hand, all the cotton and corn which might be produced up to the law-day of the mortgage, all farming utensils, and household and kitchen furniture. The law-day of the mortgage was postponed for nearly six years, the possession in the meantime remaining with the mortgagors; and it was shown that the property conveyed greatly exceeded in value the amount of the mortgage debt: *Held,* that the mortgage was fraudulent and void as to the other creditors of the mortgagors.

4. *When equity will control mortgagee whose mortgage becomes oppressive.*—The principle that equity will control the action of a mortgagee, whose mortgage becomes oppressive to a third party, applies only to mortgages fairly made, and not to such as operate in the nature of assignments by insolvent debtors of all their property.

5. *Deed void as to third persons, good between parties.*—A deed which is fraudulent and void as to creditors whose debts are delayed, is nevertheless valid as between the parties themselves, and neither can set up the fraud to avoid it.

Wiley, Banks & Co. v. Knight et al.

6. *Mortgage void for constructive fraud, not valid security in part.*—Where a part of the consideration of a mortgage, which is void for constructive fraud as against creditors, is the payment by the mortgagees of a previous incumbrance on a portion of the property, it cannot stand as a valid security for their reimbursement.

7. *General prayer does not authorize relief inconsistent with case made by bill.*—Under the general prayer for relief, complainants cannot have a decree inconsistent with the allegations of their bill; as where mortgagees ask the reformation of their mortgage and an injunction against judgment creditors of the mortgagor, and their mortgage is held fraudulent and void against such creditors—they cannot, under the general prayer, have established as a valid security in their hands a previous incumbrance on the property, which they allege was paid and discharged, and constituted a part of the consideration of their mortgage.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by the appellants, asking the reformation of a certain deed of mortgage executed by J. A. & W. H. Knight, and an injunction against several judgment creditors of the mortgagors who had levied on the property. The mortgage, which was made an exhibit to the bill, is dated February 9, 1852, and the law-day is January 1, 1858. The debt secured is described as due by promissory note for $9,500, bearing even date with the mortgage, and falling due on said January 1, 1858; and the property conveyed consists of 560 acres of land in Macon county, 160 acres in Chambers, a storehouse and lot in the town of Auburn, a contract with one Mahone for the purchase by him of a stock of goods at $1,750, which were to be paid for in land; also, the books, notes, and accounts due the firm of J. A. & W. H. Knight, sixteen negroes, "all the cotton and corn which may be raised and produced by said J. A. & W. H. Knight until said debt is paid"; also, "all the stock and provisions now on hand, or which may hereafter be on hand to said January 1, 1858, which may consist of horses, mules, cattle, hogs, sheep, wagons, carts, farming utensils, household and kitchen furniture, one buggy, and one cotton gin."

The bill alleges, that the complainants are merchants residing in Charleston, South Carolina, and that said J. A. & W. H. Knight were a mercantile firm doing business at Auburn, Macon county, Alabama; that at the time said mortgage was

22

executed, the mortgagors were indebted to complainants, for goods previously sold, to the amount of about $5,000 ; that they had previously executed a mortgage to one Wimberley on a part of said property, to secure a debt then due and owing from them to him of $4,460 ; that said mortgage to Wimberley had been duly recorded, and was a valid and subsisting lien on the property covered by it ; that complainants, being wholly unable to obtain any security for their said debt without assuming said Wimberley's debt, did assume said debt, and have since paid a large portion of it, and hence the amount of their mortgage debt is these two debts combined ; that they made this arrangement with their said debtors from actual necessity, in good faith, and only because they could not obtain any other terms, and for the same reason they were compelled to allow the long credit stipulated in the mortgage.

The bill further alleges, that said mortgage, through the mistake of the attorney by whom it was drafted, does not contain all the provisions and stipulations which were intended by the parties to be inserted therein ; that it was intended to convey " the rents and profits, or crops of cotton and corn, annually accruing or produced by or from said property, with a further provision that said rents and profits were to be applied annually to the payment and extinguishment, *pro tanto*, of the interest accruing on said indebtedness," &c. It alleges, also, that several judgments have been recovered against said J. A. & W. H. Knight since the execution of said mortgage ; that executions have been issued on these judgments, and have been levied on the mortgaged property, &c. The prayer is for a reformation of the mortgage, an injunction against the judgment creditors, and for general relief.

All the defendants answered the bill, except the mortgagors against whom decrees *pro confesso* were entered ; insisting that the mortgage was fraudulent and void as to them, both in law and in fact, because made to hinder and delay creditors ; and demurring for want of equity.

The chancellor overruled the demurrer for want of equity, but dismissed the bill on final hearing ; holding that the complainants were chargeable with notice of the insolvency of

the mortgagors, that the mortgage was fraudulent and void in law, that it could not be reformed because of the fraud, and that it could not be set up by complainants as valid for any purpose.  His decree is now assigned for error.

ELMORE & YANCEY, and J. E. BELSER, for the appellants:

I. The plaintiffs' mortgage is not fraudulent and void.

1. Fraud on the part of the mortgagor alone is not sufficient to invalidate a mortgage.—Stover v. Herrington, 7 Ala. 142; Hooks v. Anderson, 9 ib. 704; Abercrombie v. Bradford, 16 ib. 560; 3 Dana, 324; 12 B. Mon. 38; 6 ib. 608.  The case of Townsend v. Harwell, 18 Ala. 304, rests on its own peculiar circumstances, and was controlled by the special verdict of a jury.

2. A creditor has the right to purchase the property of his debtor, or to take it in security for his debt; and the probability of other creditors getting the property, is a justifiable motive for the act.—Ford v. Williams, 3 B. Mon. 554; Pearson v. Rockwell, 4 ib. 299; Copenheaver v. Huffaker, 6 ib. 19; Lee v. Flannagan, 7 Ired. L. 471; Kirtland v. Snow, 20 Conn. 23; Craig v. Tappin, 2 Sandf. Ch. 78.

3. A distinction exists between a sale to satisfy a precedent debt, or a mortgage to secure it, and a mere purchase of property by the payment of an adequate consideration; but either, if *bona fide*, may be done.—Hartshorn v. Eames, 31 Maine R. 98; Holbird v. Anderson, 5 Term R. 235; Pickstock v. Lyster, 3 M. & Sel. 371; Lee v. Flannagan, 7 Ired. L. 474; Andrews v. Jones, 10 Ala. 400.

4. The corrupt or covinous motive with which a mortgage is made, or an act done, gives it a fraudulent character; and where the facts are susceptible of an honest intent, fraud will never be imputed.—Shackelford v. Bank, 22 Ala. 243; Insurance Co. v. Pettway, 24 ib. 544; Gary v. Colgin, 11 ib. 514; U. S. Bank v. Huth, 4 B. Mon. 431; Copenheaver v. Huffaker, 6 ib. 19; 8 Barb. S. C. R. 588; 7 Gill's R. 366; 8 Geo. 258; 14 Smedes & Mar. 30.

5. Mere indebtedness of the mortgagor at the time of the execution of a mortgage, of itself, is not evidence of fraud; nor is the pendency of suits conclusive as to a fraudulent intent.—Frow v. Smith, 10 Ala. 571; Williams v. Jones, 2 ib.

314; Doyle v. Sleeper, 1 Dana, 532; Reinhart v. Bank, 6 B. Mon. 254; Wilt v. Franklin, 1 Binney's R. 514; Beals v. Guernsey, 8 Johns. 348.

6. Possession by a mortgagor, *per se*, is not fraudulent; nor is it, in general, any evidence of fraud in fact.—Allen v. Montgomery Railroad Co., 11 Ala. 438; Snyder v. Hitt, 2 Dana, 204; North v. Crowell, 11 N. H. 251; Holbrook v. Baker, 5 Greenl. 312; Davis v. Evans, 5 Ired. L. 525; Claytor v. Anthony, 6 Rand. 304; 4 Comst. 303; 3 Metc. 515; 7 Wend. 279.

7. There is a difference, as to possession being left with the mortgagor, between an absolute sale and a mortgage. This difference, though abolished in some States, here remains in full force.—Allen v. Montgomery Railroad Co., 11 Ala. 438; P. & M. Bank v. Clarke, 7 *ib.* 765; Doane v. Eddy, 16 Wend. 527; Barrow v. Paxton, 5 Johns. 258; Bissell v. Hopkins, 3 Cowen, 166; Brinley v. Spring, 7 Greenl. 241; Tompkins v. Wheeler, 16 Peters, 106; Patten v. Smith & Shepard, 4 Conn. 450; Badlam v. Tucker, 1 Pick. 389; Cutter v. Copeland, 6 Shep. 127; North v. Crowell, 11 N. H. 251.

8. That the property conveyed was worth more than the amount of the mortgage debt, does not necessarily render the deed fraudulent. To take ample security, especially where some of the property may die, is no sign of fraud.—Borland v. Mayo, 8 Ala. 117; Andrews v. Jones, 10 *ib.* 418; Young v. Stallings, 5 B. Mon. 308; Crosby v. Huston, 1 Texas R. 233; Downs v. Kissam, 10 How. (U. S.) 102.

9. The payment of the Wimberley mortgage shows the true motive of the appellants in taking their deed, and is a strong circumstance in favor of the fairness of their mortgage. Ford v. Williams, 3 B. Mon. 558; Brown v. Smith, 7 *ib.* 361; Brown v. Foree, *ib.* 358.

10. The mortgage is not fraudulent on its face, nor is it rendered fraudulent by the circumstances.—Pope & Son v. Wilson, 7 Ala. 693; Planters' Bank v. Borland, 5 *ib.* 541; Borland v. Walker, 7 *ib.* 269; Allen v. Railroad Co., 11 *ib.* 437; Andrews v. Jones, 10 *ib.* 400; Frow v. Smith, *ib.* 571; Ticknor v. Wiswall, 9 *ib.* 305; 5 Humph. 612; 12 Ill. 261; 1 Texas, 203; 6 B. Mon. 608; 7 Ired. L. 471.

11. There is not a particle of evidence tending to prove

Wiley, Banks & Co. v. Knight et al.

actual fraud; on the contrary, the evidence of Reese shows that the mortgage was accepted as a dernier resort, and only after repeated and unsuccessful efforts to obtain better terms.

12. The inference drawn by the chancellor, that appellants knew the embarrassment of their debtors when they took their mortgage, cannot be sustained.—Anderson v. Hooks, 9 Ala. 705; Borland v. Mayo, 8 *ib.* 116; Stanley & Elliott v. The State, 26 Ala. 26.

13. But, even if the insolvency of the mortgagors had been known to appellants at that time, this would not vitiate it, if other circumstances showed it to be fair on their part.—Allen v. Railroad Co., 11 Ala. 437; Ticknor v. Wiswall, 9 *ib.* 305; Hindman v. Dill, 11 *ib.* 689; Frow v. Smith, 10 *ib.* 571; 9 Sm. & Mar. 394.

II. If a mortgage, fairly made to one creditor, becomes oppressive to another, a court of equity will so control the former as to prevent injury to the latter. The defendants in this case, as judgment creditors of the mortgagors, can proceed by bill in equity to have the property sold under or subject to the mortgage; and having this right, they cannot complain of the six years' credit, which injures the mortgagees only.—Pope & Son v. Wilson, 7 Ala. 697; Dubose v. Dubose, *ib.* 236; Chambers v. Mauldin, 4 *ib.* 477; Davis v. Evans, 5 Ired. L. 525; 7 Peters, 615; 7 Ired. 477.

III. But if the mortgage to the appellants should be held constructively fraudulent as to the other creditors, then the sum advanced by them on the Wimberley mortgage should be refunded to them, or they should be allowed to set it up as a security for the money paid by them on it. If it had not been discharged, their right thus to use it, as equitable assignees, would be indisputable; and the only question now is, whether it is consistent with equity and good conscience that they should be repaid the money advanced by them on a *bona fide* incumbrance, or the other creditors be allowed to appropriate their money. In courts of law, the general doctrine is, that a deed invalid in part is void altogether; but there are some exceptions to this rule even at law. Courts of equity, however, are not bound by any such rigid rules, but act according to the equities of the case. When a fraud was in fact intended, equity will give no relief; but when the circumstances

are only suspicious, or where the transaction is only constructively fraudulent, the court will allow a satisfied deed or incumbrance to be set up as a security for reimbursement, provided it effects substantial justice. This is the result of all the cases.—Boyd v. Dunlap, 1 Johns. Ch. 482; James v. Johnson, 6 *ib*. 425; Burnett v. Denniston, 5 *ib*. 41; Mills v. Comstock, *ib*. 220; Towle v. Hart, 14 N. H. 61; Hatch v. Kimball, 14 Maine R. 9; 2 Cowen, 246; Thompson v. Chandler, 7 Greenl. 377; Harvey v. Hurlbut, 3 Vermt. 561; Marshall v. Wood, 5 *ib*. 250; Lockwood v. Sturtevant, 6 Conn. 374; Herne v. Meers, 1 Vern. 465; How v. Welden, 2 Ves. (Sr.) 516; Kirkham v. Smith, 1 *ib*. 258; Forbes v. Moffatt, 18 Vesey, 384; Shrewsbury v. Shrewsbury, 1 *ib*. 233; Ld. Compton v. Oxenden, 2 *ib*. 264; Gardner v. Aston, 3 Johns. Ch. 53; 6 Gill & J. 230.

The other creditors, if they deny this right to appellants, place themselves in an awkward position. They are compelled to assume the ground, that this mortgage was discharged in such manner that appellants can, under no circumstances, be regarded as equitable mortgagees, or entitled to set it up in a court of equity; and this involves the proposition, that the payment to Wimberley, which was a part of the consideration of appellants' mortgage, was a valid transaction; and affirming the validity of this part of the transaction, they affirm the whole, and complainants are entitled to all the relief they ask.—Butler & Alford v. O'Brien, 5 Ala. 316; Sheppard v. Buford, 7 *ib*. 90; Firemen's Insurance Co. v. Cochran & Co., at present term. The defendants cannot set up this payment as valid to discharge the incumbrance, and then say it is void for the fraud.

CLOPTON & LIGON, and GEO. W. GUNN, *contra* :

I. The appellants' deed of mortgage is fraudulent in law.

Fraud in fact, or an express intent to commit a fraud, is not necessary, in order to render a conveyance fraudulent against creditors : if the effect of the conveyance is to hinder or delay them in the collection of their debts, it is fraudulent. Montgomery's Executors v. Kirksey, 26 Ala.; Buck v. Sherman, 2 Doug. 180. To justify a court in inferring that a deed was made with fraudulent intent, when no fraud in fact is

proved, at least two things must concur—there must be cred-
itors, known to the parties, who may be hindered or delayed
in the collection of their debts by the provisions of the deed ;
and the necessary consequence of the deed must be to produce
such delay or hindrance.—Pope v. Wilson, 7 Ala. 695. If
these two things concur, whether apparent on the face of the
deed, or shown by the evidence, the court will not further
inquire into the *bona fides* of the intention.

The badges of fraud in law which attach to this deed, are,—

1. No schedule of the books, notes, accounts, &c., trans-
ferred, is annexed to the deed ; and no explanation of the
omission is even attempted. Although this fact, of itself, is
not evidence of fraud ; yet, unexplained, it adds weight to
any other objection that may exist to the deed.—Cummings v.
McCullough, 5 Ala. 334; Wiswall v. Ticknor & Day, 6 *ib*. 183.

2. Articles of property of a perishable nature, some of
which must necessarily be exhausted in the use, are conveyed
by the deed ; and many articles are conveyed, such as stock,
household and kitchen furniture, the crops to be raised, &c.,
the use of which for six years would cause, if not entire
destruction, at least great deterioration in value. How is the
stock to be fed, and how are the mortgagors and their fami-
lies to be supported, if not from the crops ? The evidence
shows that they have no other means of support. This is a
secret trust, or use, reserved to the grantor, which stamps the
deed as fraudulent.—Ravisies v. Alston, 5 Ala. 302; Wiswall
v. Ticknor & Day, 6 *ib*. 184 ; 9 *ib*. 308 ; Farmers' Bank v.
Douglass, 11 Smedes & Mar. 540 ; 4 Yerg. 550 ; Elmes v.
Sutherland, 7 Ala. 267.

3. Property not the subject of mortgage is conveyed by the
deed—crops for six years not yet planted, and all the prop-
erty owned by the mortgagors ; clearly evincing an intention
to secure from seizure by their other creditors not only all
they then had, but all they expected to make in six years.

4. The length of credit which was given, if not of itself, at
least when taken in connection with the other circumstances,
is sufficient to stamp the deed as fraudulent.—Pope v. Wilson,
7 Ala. 697; Johnson v. Thweatt, 18 *ib*. 744; Farmers' Bank
v. Douglass, 11 Smedes & Mar. 539.

II. There is also evidence of fraud in fact.

III. The complainants can derive no benefit from their

payment of the Wimberley mortgage, which was a part of the original transaction, and vitiated by the same fraud.—Tatum v. Hunter & Thomas, 14 Ala. 557. The payment discharged the mortgage and destroyed the lien, and no subsequent act of the parties can revive or reinstate it. It cannot stand as a security in their hands for reimbursement of the sum paid on it.—1 Johns. Ch. 482; 4 *ib.* 598; 8 Vesey, 283; 1 Vermt. R. 465; Bryan v. Young, 21 Ala. 264; Stokes v. Jones, 18 *ib.* 734; Johnson v. Thweatt, *ib.* 741; 2 Carter's (Ind.) R. 189; 5 Gratt. 84; 13 Smedes & Mar. 348.

CHILTON, C. J.—The proof, which we have carefully examined, satisfies our mind, that at the time of the execution of the mortgage in question, the firm of J. A. & W. H. Knight was insolvent; and the circumstances are such as, when taken together, to fix notice of their inability to pay all their debts upon Wiley, Banks & Co. This last named firm resided in Charleston, where the Messrs. Knight had purchased their goods to carry on their mercantile concern, which was located at Auburn in this State, at which place they were largely indebted when the mortgage was given. Some of these debts were due in 1850, others in 1851, and the notes given for them had been protested. The demands due from them to the complainants were past due; one of them, for $1280, being due for over 18 months anterior to the execution of this deed. Besides this, some seven thousand dollars of demands, existing in favor of Charleston merchants, were then actually in suit in Macon county; and one of the complainants was at Auburn in said county, where he remained near a week, doubtless endeavoring to collect the demands which he held against the Knights; shortly after which, the claims were sent to Mr. Reese, at Auburn, an attorney at law, for collection or security.

Now, although Mr. Reese, as he testifies, " did not know positively, at the time of the execution of the mortgage, that the Knights were in failing circumstances," he certainly had, as he testifies he presumes his clients, the complainants, had, reason to believe that such was their condition. He knew of the Wimberley mortgage for a large debt, which covered their property; he knew of other demands against them, and

himself had endeavored to secure them from collaterals; he knew that the bond for the house in which they resided had been turned over to a creditor, for whom he was attorney; that the debts, accounts, &c., due said firm, had been so culled over, as that the whole surplus remaining were almost worthless. Knowing all these facts, he certainly had very strong reasons to believe, what he swears he soon afterwards ascertained, that at the time he took this mortgage the Knights were insolvent. Mr. Reese does not state that he did not *believe, and had not sufficient evidence on which to found a rational well grounded conclusion*, that they were in failing circumstances: the contrary is fairly inferable from his testimony, and his conduct in the negotiation. It is incredible that, with a belief of their ability to pay their debts, this attorney would have manifested the zeal and energy, and would have submitted to the sacrifices, which were made to secure these mortgage debts, rather than sue upon the demand. According to his testimony, he "insisted and entreated that the Knights should execute to complainants a deed of trust, with power of sale, making the limitation of said deed the first of January, 1853; which the Knights refused. He then proposed different and shorter times than granted as shown by the mortgage; but the Knights, particularly John A. Knight, who owned most or nearly all the property mentioned in the mortgage, utterly and positively refused to execute a mortgage, with powers of sale, and that unless complainants would grant six years, he would not sign any conveyance of his property; and despite the entreaty of witness, the Knights refused any other terms than those granted as shown by the mortgage; and that witness, rather than lose so large a debt, or even jeopard it, at length agreed, through necessity, to allow the time demanded." The Knights also required that the large debt to Wimberley should be paid, as a condition precedent to the execution of such security. It seems, therefore, that such was the necessity for securing the demands of complainants, that the Knights were allowed to dictate the terms,—terms which are irreconcilable with the idea that complainants believed that they could have collected their demands by suit at law. The truth is, that this agent thought he saw the cloud which threatened to overwhelm this firm,—

he saw the danger his clients were in, and, doubtless influenced solely by a laudable desire to save them, he was prepared to make sacrifices commensurate with the necessity for security ; and hence he submitted to the extraordinary terms required by the Knights, in order to obtain for them this deed.

It is wholly immaterial whether notice of the Knights' insolvency, or failing condition, be brought home to the complainants personally, if their agent or attorney had notice ; for, upon general principles of policy, it must be taken for granted that the principal knows whatever the agent knows. Per Ashurst, J., in Fitzherbert v. Mather, 1 T. R. 16 ; Paley on Agency, 199. If such were not the law, notice might be avoided in every case by the employment of an agent. Amb. 626. And this principle applies equally in law and in equity.—Paley on Agency, 199 ; Doe *ex d.* Willis v. Martin, 4 T. R. 66.

Having ascertained that on the 9th February, 1852, when this mortgage was made, the mortgagors were insolvent, and the mortgagees took it under such circumstances as to charge them with notice of that fact, we proceed to inquire whether the deed can be supported.

Upon this point, the bare statement of the proposition is at once the solution of it. An insolvent firm, with a large amount of debts in suit against it, which in a short time will go into judgments, is importuned by one of its creditors for security. This firm consents to give the security, by a mortgage on all the effects of the partners, as well as firm effects, upon condition that the grantors, or mortgagors, shall retain the possession of the property for *six* years. This property is more than sufficient to pay the mortgage demand ; and the mortgage embraces, in addition to other property, live stock, provisions, &c., which must, in the contemplation of the parties, have been intended to be used by the mortgagor and his family, who have no other means of support, and a part of which must be consumed in the use. But it does not stop here :—the mortgage is made to cover all the corn and cotton which may be raised by the mortgagors until the law day, or payment of the mortgage debt ; by which provision, we suppose, was intended the surplus after supporting the

family of the mortgagors. Such, evidently, is Mr. Reese's understanding of the agreement; for, in his deposition, he states, that he called on the mortgagors for the proceeds of the crop; and that Knight informed him (as he believes, truly) that by reason of his having to pay high for *provisions* and rent of land, no *surplus* remained. It must be borne in mind, also, that the debts thus secured were all past due when this mortgage was executed.

What is the necessary effect of such a deed? We answer, If the contract is allowed to stand, and is to be carried out, the insolvent debtor, in consideration of a preference given to one among many creditors, has purchased a living for himself and family for six years, at the expense of all but the preferred creditor; he will have hindered and postponed the collection of all the demands against him for that length of time, enjoying all the while the possession of all his estate. As was said in Montgomery v. Kirksey, 26 Ala. R. 185, " It is not permissible for any one thus to avail himself of a part of his indebtedness, to tie up all his property and exempt it from liability to satisfy his other debts, while he has the temporary benefit of the use of it," &c. The preferred creditor and the insolvent debtor agree to appropriate the *whole* of the debtor's property, which is more than sufficient to pay the preferred debt, to their mutual and exclusive benefit for six years, to the hindrance, delay, and 'utter exclusion of all other creditors; and, not content to limit this exclusion to the property itself, they embrace, under cover of their deed, the issues and profits thereof.

It will not do for the preferred creditor to say, 'I was influenced by no fraudulent or improper motive—all I desired was to secure an honest debt, and I made the very best arrangement with my debtor the most urgent entreaty could obtain.' At this point the law interposes, and says, 'Every man is presumed to intend the natural and necessary consequences of his acts; and the courts must presume the intention to exist when the consequences must necessarily follow, and will not listen to an argument against it.'—Pope v. Wilson, 7 Ala. R. 694. The law allows an honest preference to be given by a failing debtor to a creditor; but it utterly repudiates the idea, that such a preference may be obtained by

tying up all the debtor's property, which is more than sufficient to secure the debt, exempting it for an unreasonable time from all his other creditors, while it is provided (or results as matter of law in the absence of a provision) that the insolvent, in the meantime, shall reap a permanent benefit from it, by retaining the possession. In such case, the arrangement is, as a conclusion of law, fraudulent and void, as it operates a fraud on the other creditors; and whether the parties actually intended to defraud or not, is wholly an immaterial inquiry.

None of the numerous cases cited by the counsel for appellants are analogous to the case before us. The cases which hold that it is competent for the court of equity to control the action of a mortgagee, whose mortgage becomes oppressive to a third party, apply to mortgages fairly made, and not to those which operate in the nature of assignments by insolvents of all their property.

The cases relied upon by the learned chancellor, especially, The Farmers' Bank v. Douglass, 11 Smedes & Mar. R. 469, sustain the view he felt constrained to take of this case; which view, upon a full investigation of the record, we think is in perfect consonance with the law.

That the complainants have discharged the mortgage debt to Wimberley, as a prerequisite to obtaining the mortgage under consideration, gives them no right upon the allegations of this bill, to insist upon that mortgage which has been satisfied. They paid it as part of a contract by which they were to become the creditors of the mortgagors, the Knights, to the extent of such payment; the same to be extended to the first day of January, 1858, being blended with the previous indebtedness of the Knights to the complainants. As between the complainants and the Knights, this deed, and the arrangement on which it is based, are valid. The deed is only void as to the creditors whose debts are delayed, hindered, &c.—6 Ala. R. 367; 5 ib. 31; 10 ib. 804; 24 ib. 513; ib. 531. Neither *party* to it can say it is void for fraud. The reply of the Knights to such an allegation might be, 'It is only void, by the statute, as to creditors defrauded—as between us, the parties to it, it is valid.' Besides this, there is no averment that the Wimberley mortgage was assigned

to complainants, or that it is subsisting. The bill is not filed to set it up, but virtually concedes that it is discharged, and claims the sum paid as secured by complainants' mortgage.

But it may be said, that the court may hold the mortgage to the complainants as a valid security to the extent of the amount paid to extinguish the Wimberley mortgage—that a deed may be good in part, and bad in part, as was decided in Anderson v. Hooks, 9 Ala. R. 704. Without disputing the authority of that case, we think it has no application to the one before us. There, the deed secured separate demands alleged to be due to different individuals. One was simulated, the other *bona fide;* and it was held to be a valid security for the honest debt, but void as to the simulated one. The honest creditor, who did not in any way participate in the fraud of the grantor, and who accepted a provision fair and *bona fide* on its face, was not held affected by the fraud of the grantor by inserting and professing to secure a simulated demand. In this case, there is no party to the deed unaffected by its infirmity. This infirmity goes to the instrument as a whole, and equally affects all its parts. If it avails at all, it must avail according to its terms. If it be held as security for *part* of the demand, because *that* was the price of extinguishing an incumbrance which constituted a lien older than that of the creditors, it must operate according to its terms, or else we must make a new contract of security for the parties ; and if it is so to operate, why then the deed effectually delays, hinders, and defrauds the creditors, to the extent of this payment.

But it is argued, that the creditors set up this agreement to extinguish Wimberley's mortgage, and, having gotten rid of that, seek to invalidate the mortgage which, to that extent, they have made available for their benefit. The answer to this is, that the creditors do not set up either deed. They merely repose upon their legal rights. It is the complainants, as we have said, who set up the deed, and who ask the court to become active in relieving them against the creditors—to decree an injunction, in virtue of a deed which is fraudulent as to those creditors ; and if this cannot be done, then, under the general prayer for relief, to rid them of the dilemma in which they have placed themselves, by refunding

the amount they were compelled to pay in order to obtain such deed.   We have seen no case which goes to this extent.

To proceed and render a decree, setting up the Wimberley mortgage, and pronouncing that void which is set up in the bill, would be to render a decree, which would not only be unsupported by the allegations of the bill, but predicated upon a state of facts precisely the opposite of those which are charged ; for it would be to declare null and void a deed which the complainants set up as valid and effectual, and on which they ground their title for relief, and to set up a deed as subsisting which the complainants allege has been fully paid and discharged.   So that, without intending to decide whether the complainants can have any relief on account of their payment of the mortgage to Wimberley upon a proper application, it is clear they can obtain no relief under the case as now presented.—1 Danl. Ch. Pr. 437 ; Litt. Sel. Cases, 146 ; 16 Peters, 182 ; 13 Ala. R. 693 ; 22 *ib.* 106 ; 2 Dev. R. 44 ; 2 Paige, 396 ; 4 *ib.* 538.   To set up the Wimberley mortgage, would be to take the defendant entirely by surprise, as it is only mentioned for the purpose of corroborating the plaintiff's right to the relief specifically prayed. 1 Danl. Ch. Pr. 437 ; 2 Paige, 397.

Upon the whole, while we feel satisfied that the agent of the complainants, who procured this mortgage, was influenced solely by an honest desire to secure the demands of his principals, which were in danger of being lost, he has suffered his zeal to obtain for them a preference, and the obstinacy of the grantors which refused peremptorily any terms but those contained in the deed, to betray him into an arrangement, which, however free from any fraudulent intention on his part, operates necessarily a fraud on the other creditors ; and as the circumstances are such as reasonably to bring home notice to him, and consequently to his principals, of the nature and operation of such deed, the law affixes the intent as contemplating the necessary result, and stamps the deed as fraudulent and void.

Let the decree be affirmed.