HARTFORD ACCIDENT & INDEMNITY CO. *v.* JIRASEK.

1. FRAUDULENT CONVEYANCES—DEBTOR MAY PREFER CREDITOR.
   Debtor has right to give preference to certain of his creditors if he so desires.

2. SAME—WHEN CONVEYANCE FRAUDULENT.
   Under uniform fraudulent conveyance act (3 Comp. Laws 1929, § 13392 *et seq.*), conveyance which rendered grantor insolvent was fraudulent as to creditors if made without fair consideration.

3. SAME—PURPOSE OF UNIFORM FRAUDULENT CONVEYANCE ACT.
   Purpose of uniform fraudulent conveyance act is to make available to a "creditor," as defined in the act, an adequate remedy which theretofore was not available until the creditor had first reduced his claim to judgment.

4. SAME—REMEDIAL STATUTE SHOULD BE LIBERALLY CONSTRUED.
   Uniform fraudulent conveyance act is remedial, and should be given liberal construction.

5. SAME—EQUITY—JURISDICTION.
   Where conveyance claimed to have been given to secure certain creditors rendered grantor insolvent, court of equity has jurisdiction of whole subject-matter in litigation in suit by other creditors attacking said conveyance as fraudulent as to them, and it is immaterial whether their right to recover from grantor is based on fraud and deceit or on assumpsit upon waiver of tort (3 Comp. Laws 1929, § 13392 *et seq.*).

6. ELECTION OF REMEDIES—EQUITY—ACTION AT LAW.
   Mere starting of action at law or suit in equity does not constitute election of remedy.

7. SAME—FRAUDULENT CONVEYANCES.
   Suit to set aside deed as in fraud of creditors is not barred by previous action at law by plaintiffs against grantor.

8. FRAUDULENT CONVEYANCES—EQUITY—JURISDICTION—ACCOUNTING.
   Where, in suit to set aside deed as in fraud of creditors, it appears that said deed constitutes valid mortgage lien prior to plaintiffs' claim, and that grantor by said conveyance was rendered insolvent, determination of amount of secured indebtedness should be made, and grantor's equity, if any, subjected to plaintiffs' claim (3 Comp. Laws 1929, § 13392 *et seq.*).
   CLARK and MCDONALD, JJ., dissenting.

Remedy of general creditor or judgment creditor as affected by uniform fraudulent conveyance act, see annotation in 65 A. L. R. 251.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted April 18, 1930. (Docket No. 97, Calendar No. 34,940.) Decided April 7, 1931. Rehearing denied June 1, 1931.

Bill by Hartford Accident & Indemnity Company, a Connecticut corporation, and another, as assignees, against Charles Jirasek and others to set aside a conveyance of real estate. Decree for plaintiffs. Defendants appeal. Modified and affirmed.

*Byron A. Carse,* for plaintiffs.

*Lyle G. Younglove* and *Harry H. Wait,* for defendants.

McDonald, J. (*dissenting*). This is an appeal by the defendants from a decree awarding damages to the plaintiffs against defendant Charles Jirasek for $60,623.09 and setting aside as fraudulent a quitclaim deed from him to Joseph Jirasek and Julia, his wife.

The controversy grew out of an alleged conspiracy between Charles Jirasek, Gustav Peeters, and two bank tellers of the Detroit Savings Bank which resulted in a loss to the bank of $59,777.67. The plaintiffs had furnished the bank with indemnity bonds. They paid the loss and took an assignment of the bank's claims against Peeters and Jirasek and the two tellers. Jirasek is the only one of the parties concerned in this suit. The plaintiffs began attachment proceedings against him in the Wayne circuit court and attached certain land in Oakland county known as the Sylvan Shores property. They subsequently learned that Sylvan Shores had been deeded by Charles Jirasek to his brother Joseph Jirasek and wife. Alleging that this transfer was fraudulent as to creditors, this bill was filed to have the deed set aside and for a money decree against Charles Jirasek. The attachment suit in

the Wayne circuit court has been brought to an issue
and is now pending awaiting trial by jury.

The vital proposition in the case is whether this
deed is fraudulent as to creditors, and, in discussing
that question, it will be necessary to make a further
statement of the facts.

The defendant Charles Jirasek was engaged in
the real estate business, associated with John C.
Hoskins of Pontiac, Michigan. They organized and
operated real estate corporations, bought and sold
property, and were generally successful. Jirasek
had relatives in the city of Detroit who became in-
terested in the business to the extent that they ad-
vanced money in various sums which Charles was
to invest for them. It was taken and used by him
for the firm in the purchase of real estate with the
understanding that when a sale was made of any
property, to the purchase of which they had con-
tributed, the amount of their contributions together
with their share of the profits should be paid to
them. In some transactions there were large profits,
but Mr. Hoskins wanted to retain all of the money
in the business. He recognized their interest but
deferred payment. Finally Jirasek secured a power
of attorney from each of the relatives and began
suit against Hoskins for an accounting. A settle-
ment agreement was reached by which the Sylvan
Shores property, valued at $200,000 but subject to
liens amounting to $42,000, was deeded to Jirasek
in full for his interest and that of his relatives.
They received no money. Charles Jirasek testified
that while negotiations for settlement were pend-
ing,

"I discussed with my relatives the proposed
settlement as agreed upon and it was agreed be-
tween us that Sylvan Shores property was to be
security for the amount owing to them.

"*Q.* And in that discussion between you and your relatives, state what was agreed upon between you with reference to the giving of the quitclaim deed * * * by you to Joseph Jirasek and his wife. * * *

"*A.* We have discussed that and I was to give them the deed as security and then handle the property and sell it until they will be paid, to pay their claims and whatever will be over that, why, will be mine."

Joseph Jirasek is attorney for the Studebaker Corporation in Detroit. He also had invested in the business. He testified as to how it came that he received the deed.

"Ever since the time when Charlie received a settlement in the case against Hoskins, the settlement consisted of the Sylvan Shores subdivision, there was talk between me and my relatives, who had an interest in this Sylvan Shores subdivision, as to the necessity for some sort of security to be given by Charlie, inasmuch as this money was in his hands for a long period of time. * * *

"*Q.* State if that was the talk. * * *

"*A.* The talk was some security should be given by Charlie for us all to protect ourselves in case something should happen to him * * *. In talking with Charles I spoke that it would be the thing to give a quitclaim deed solely as security for the obligation he owed my relatives and myself.

"*Q.* State whether or not you were looking after the matter for your relatives.

"*A.* Yes, sir.

"*Q.* State whether or not they left that matter in your hands.

"*A.* They did.

"*Q.* Now, * * * state the amount you claim is owed to you and your relatives for the payment of which that deed was given. * * *

"*A.* $120,000, * * * consisting of the invest-

ments, original investments, plus the profits ever since the moneys have been handled by Charles.''

The settlement with Hoskins was made in December, 1928. The deed was made to Joseph January 22, 1929, and delivered to him at his office in Detroit on the same day. On January 30, 1929, the plaintiffs attached an automobile belonging to Charles and served process on him. On the following morning, he told Joseph he was going to Pontiac and offered to take the deed and have it recorded. It was recorded at 8:40 a. m., and at 2:30 p. m. the plaintiffs attached the land conveyed. On these facts, the trial court found that the conveyance to Joseph was not made in good faith to secure an indebtedness to the relatives, that it was fraudulent as to creditors and should be set aside. We are unable to agree with his finding.

The indebtedness to the relatives of Charles Jirasek was not something framed up for a defense in this case. It had existed for several years. At the insistence of Hoskins, it had been carried along by the firm until the suit for an accounting. At the time of the settlement, Charles Jirasek receipted for the relatives and they surrendered to Hoskins certain shares of stock which they held in one of the firm's corporations. They received no money, but all understood that they were to be paid out of the Sylvan Shores property which was deeded to Charles by Hoskins. It is true that the deed to Joseph was not given until about the time when plaintiffs levied their attachment, but, under the circumstances, that fact is not inconsistent with good faith in giving the conveyance. It is quite probable that Joseph, who represented himself and the other relatives, was willing to leave matters as they were so long as Charles was successful in his real estate business. But, when financial difficulties arose, he

concluded that, with the title in Charles, their interests in the Sylvan Shores property might be in danger.  He discussed the matter with the relatives and it was decided to ask for a quitclaim deed as security.  There is no doubt that at this time Charles Jirasek owed Joseph and the other relatives a large sum of money, a considerable portion of which had gone into the purchase of the Sylvan Shores property.  It was not only proper that he should ask for security but it was good business. If Joseph Jirasek's testimony is true, there can be no question as to the good faith of the transaction. We see no reason to doubt it.  He and the other relatives were *bona fide* creditors.  Their claim was pre-existing.  Charles Jirasek had a right to secure them by this conveyance though his act in doing so was to prefer them to other creditors.  *Shelton* v. *Mann,* 85 Mich. 265; *Fassbender* v. *Donohue,* 184 Mich. 52; *Jordan* v. *White,* 38 Mich. 253; *Iosco County Savings Bank* v. *Barnes,* 100 Mich. 1; *Mc-Morran* v. *Moore,* 113 Mich. 101.

While the deed in question is absolute on its face, the testimony shows that it was given as security for a debt and is therefore held to be a mortgage. On this ground it is sustained.  It was not fraudulent as to creditors.

In view of this disposition of the case, it will not be necessary to discuss any of the other questions presented by the record.  No relief can be granted.

In the opinion filed by my Brother NORTH he has reached a wrong conclusion in holding that this quitclaim deed given to secure a debt is fraudulent as to other creditors.  That there was no fraud even in his view of the facts is apparent from the following statement which I quote from his opinion:

"We think it conclusively appears that the quitclaim deed (mortgage) was given in good faith to

secure payment of an antecedent debt due from
Charles to his relatives, and it cannot be said from
this record that the amount of the debt was dispro-
portionately small as compared with the value of the
property mortgaged. Charles had the right to give
preference to certain of his creditors if he so de-
sired.''

If this is a correct statement of the facts, and
there is no doubt of it, how can it be said that the
deed is fraudulent? My brother's conclusion is in-
consistent with his findings on the facts. Though
he says that the quitclaim deed was given in good
faith to secure a debt; that it was for a fair con-
sideration; and that Charles had a right to thus
secure this debt in preference to the debts of other
creditors, he holds that it was fraudulent as to these
other creditors. How he reaches this conclusion ap-
pears in the following statement quoted from his
opinion:

''There was absolutely no consideration for
Charles' conveyance of his equity over and above
the amount he owed to his relatives.''

The obvious answer to this statement is, that the
instrument is a mortgage and there was no convey-
ance of an equity. Charles still owns an interest in
the property and that interest is covered by the
attachment filed before the commencement of this
suit. All he did by executing the quitclaim deed was
to give his relatives a lien to secure their debt. It
is difficult to follow my brother in his attempt to find
fraud in an instrument which he says is a legally
perfect mortgage.

In my judgment, the quitclaim deed is not fraud-
ulent as to creditors and therefore the plaintiffs can-
not ask to have their claims determined on the equity
side of the court. All the relief which under my
brother's theory they could obtain in equity can be
obtained in the pending attachment suit. Their re-

lief is for a money judgment. In the absence of fraud, equity cannot retain jurisdiction to grant that relief. *Koontz* v. *Bay Circuit Judge,* 224 Mich. 463; *Wisper* v. *Dix-Ferndale Land Co.,* 241 Mich. 91.

A decree should be entered dismissing the bill, with costs to defendants.

CLARK, J., concurred with McDONALD, J.

NORTH, J. *(for modification).* I am unable to agree with the conclusion of Mr. Justice McDONALD that plaintiffs' bill of complaint should be dismissed. In an opinion filed by him the circuit judge made the following determinations:.

(1) That the defendant Charles Jirasek was a party to the fraudulent conspiracy which rendered plaintiffs herein liable to the Detroit Savings Bank for the resultant loss.

(2) That the quitclaim deed of property known as Sylvan Shores in Oakland county from Charles Jirasek to his brother Joseph is in fact and in law a mortgage, that it was not made in good faith as security for prior indebtedness of Charles Jirasek to his relatives and is void as against plaintiffs' claim.

(3) That "it is true relatives (of Charles Jirasek who now claim prior rights under this quitclaim deed as a mortgage) had advanced considerable sums of money to Jirasek during a period of over ten years." (The undisputed proof shows these advancements are still unpaid.)

(4) That notwithstanding a prior attachment suit to recover the same amount here claimed by plaintiffs had been started by them in the circuit court of Wayne county, the circuit court of Oakland county, in chancery, has jurisdiction under the so-called uniform fraudulent conveyance act, Act No. 310, Pub. Acts 1919 (3 Comp. Laws 1929, § 13392 *et seq.*), to hear and determine the issues presented by the bill of complaint; and plaintiffs are entitled to the relief sought.

A careful examination of the record convinces us that the determination of the circuit judge should be sustained except that portion of paragraph 2 above wherein it is held the quitclaim deed (mortgage) was not made in good faith as security for a prior indebtedness and that it is void as against plaintiffs' claim.

We think it conclusively appears that this quitclaim deed (mortgage) was given in good faith to secure payment of an antecedent debt due from Charles to his relatives, and it cannot be said from this record that the amount of the debt was disproportionately small as compared with the value of the property mortgaged. Charles had the right to give preference to certain of his creditors if he so desired. (See cases cited in the opinion of Justice McDONALD.) But this quitclaim deed from Charles to Joseph purported to divest Charles of all his interest in the Sylvan Shores property, thus defeating plaintiffs' right to obtain satisfaction of any judgment or decree secured against Charles who possessed no other property of value. I fully agree with Mr. Justice McDONALD that "the vital proposition in the case is whether this deed is fraudulent as to creditors," particularly as to plaintiffs. If the conveyance is fraudulent, plaintiffs' bill should not be dismissed on the ground of lack of equity jurisdiction. Whether or not it is fraudulent should be determined in the light of the provisions of the uniform fraudulent conveyance act (3 Comp. Laws 1929, § 13392 *et seq.*) which provides:

" 'Creditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. 'Debt' includes any legal liability, whether matured or unmatured, liquidated, absolute, fixed or contingent. (3 Comp. Laws 1929, § 13392.)

"A person is insolvent when the present fair

salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. * * * (3 Comp. Laws 1929, § 13393.)

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is *fraudulent* as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration." (3 Comp. Laws 1929, § 13395.)

There can be no question but that by giving this deed to his brother, Charles Jirasek became insolvent within the meaning of the act quoted. In this particular the circuit judge made the following finding:

"At the time of giving the deed practically all of the property possessed by the defendant Charles Jirasek of any value, including his automobile, was in the name of his brother, Joseph."

Because the conveyance rendered Charles Jirasek insolvent, it was fraudulent as to creditors if made "without fair consideration." The undisputed proof is that there was absolutely no consideration for Charles' conveyance of his equity over and above the amount he owed to his relatives. Within the meaning of the act plaintiffs are creditors of Charles Jirasek and he is their debtor.

"One who has a cause of action based on a tort is a 'creditor' within the meaning of the uniform fraudulent conveyance act." (Syllabus) *Dutcher* v. *Van Duine,* 242 Mich. 477.

The obvious purpose of this legislation was to make available to a "creditor," as defined in the act, an adequate remedy which theretofore was not available until the creditor had first reduced his claim to judgment. This statute provides:

"SEC. 9. (1) Where a conveyance or obligation

is fraudulent as to a creditor, such creditor, when his claim is matured, may  *  *  *

"(a)   Have the conveyance set aside or the obligation annulled to the extent necessary to satisfy his claim.  *  *  *  (3 Comp. Laws 1929, § 13400.)

"SEC. 10.  Where a conveyance made or an obligation incurred is fraudulent as to a creditor whose claim has not matured, he may proceed in a court of competent jurisdiction  *  *  * and the court may,

"(a) Restrain the defendant from disposing of his property,

"(b)  Appoint a receiver to take charge of the property,

"(c)  Set aside the conveyance or annul the obligation, or

"(d)  Make any order which the circumstances of the case may require."  (3 Comp. Laws 1929, § 13401.)

The act is remedial.  It should be given a liberal construction.  It has been so construed in courts of other States wherein this uniform act has been adopted.  In *American Surety Co.* v. *Conner,* 251 N. Y. 1 (166 N. E. 783, 65 A. L. R. 244), Chief Justice Cardozo writing for the court said:

"We think the effect of these provisions is to abrogate the ancient rule whereby a judgment and a lien were essential preliminaries to equitable relief against a fraudulent conveyance.  The uniform act has been so read in other States (*Gross* v. *Pennsylvania Mtg. & Loan Co.,* 101 N. J. Eq. 51 [137 Atl. 89]; *United Stores Realty Corp.* v. *Asea,* 102 N. J. Eq. 600 [142 Atl. 38]; *Morse* v. *Roach,* 229 Mich. 538; *Lipskey* v. *Voloshen,* 155 Md. 139 [141 Atl. 402]).  *  *  *  The reading seems to be inevitable, aside from any precedent.  The act is explicit that a creditor may now maintain a suit in equity to annul a fraudulent conveyance, though his debt has not matured.  *  *  *  He (the creditor) may seek the

aid of equity, and without attachment or execution, may establish his debt, whether matured or unmatured, and challenge the conveyance in the compass of a single suit.''

See, also, *Conway* v. *Raphel,* 102 N. J. Eq. 531 (141 Atl. 804); *Adams* v. *Wallace,* 94 Okla. 73 (220 Pac. 872).

While technically it may be *dicta,* this court, speaking through Justice WIEST, in the case above cited by Chief Justice Cardozo, said:

''With the adoption of the uniform fraudulent conveyance act * * * the troublesome question of whether a levy should be made and a bill in aid of execution filed, or a creditor's bill filed upon return of an execution, or a bill with double aspect filed, has departed. Now, in case a conveyance is fraudulent as to a creditor he may'' have relief under this act. *Morse* v. *Roach, supra.*

It is of no consequence in this equitable proceeding whether plaintiffs' recovery from Charles Jirasek is based on fraud and deceit or that it is considered as in assumpsit upon waiver of a tort. Charles Jirasek's fraudulent conveyance of his property rendered him insolvent, and under the uniform fraudulent conveyance act the equity court acquired jurisdiction of the whole subject-matter in litigation. This case is unlike our recent decision in *Farrell* v. *Hannan Real Estate Exchange,* 251 Mich. 669, wherein the court found the plaintiff was not entitled to equitable relief of any character whatever but only to damages recoverable, if at all, in an action at law. Under such circumstances the proceeding in equity was properly dismissed. But in the instant case, as against all the defendants, plaintiffs have established a clear right to injunctive and other equitable relief provided they maintain their conspiracy charge against Charles Ji-

rasek. Under the circumstances of this record, to hold that these plaintiffs do not have a right to equitable relief in this case is to say that the uniform fraudulent conveyance act affords a defrauded victim no remedy which he did not have prior to the enactment of this statute. For all practical purposes it would nullify the act. To make available the remedy provided by this legislation we should hold and do hold that the court of equity has and retains jurisdiction to adjudicate the whole controversy between these litigants.

Defendants' contention that since plaintiffs first instituted attachment in Wayne county they have elected their remedy and cannot proceed in equity in Oakland county is not well founded. At the time the decree was taken in the circuit, the suit at law in Wayne county had not proceeded to trial. In fact, the alleged fraudulent conveyance which gave the court in equity in Oakland county jurisdiction had not been recorded at the time the suit at law was started in Wayne county, and plaintiffs then had no knowledge thereof. The mere starting of an action at law or suit in equity does not constitute an election. 15 Cyc. p. 264. This court has said:

"But a lawsuit pending and not determined is not a bar to a suit in equity upon the same subject. At a proper stage of the cause, the court in equity may and will, on a motion for that purpose, determine whether the interests of justice require a complainant to be put to his election of remedies. He will always be allowed to elect his equitable remedy if he chooses. Story's Equity Jurisprudence (6th Ed.), § 889; 2 Daniell's Chancery Practice, 961, and *seq.* and notes." *McGunn* v. *Hanlin,* 29 Mich. 476, 480.

See, also, *Morse* v. *Roach, supra.*

The pending suit at law in Wayne county did not constitute a conclusive election which barred plain-

tiffs from instituting the equity case in Oakland county under the circumstances here presented. Nor do we find anything in the record which constitutes an estoppel against or a waiver of plaintiffs' right to pursue their equitable remedy. Defendants' claim that partial restitution by one of the other joint tort-feasors or the giving of security incident to an agreement to make restitution constitutes an estoppel barring plaintiffs from resorting to the remedy in equity is not well founded.

Since we hold the quitclaim deed constitutes a valid mortgage lien prior to plaintiffs' claim, adjudication of the latter's rights necessitates both the determination of the amount of Charles Jirasek's liability to plaintiffs and also the amount of his indebtedness to his relatives, payment of which is secured by the quitclaim deed (mortgage). On the face of the present record it seems to appear that Charles Jirasek has a very substantial equity in this property over and above his indebtedness to his relatives. This equity should be held liable for the payment of the amount found due from Charles to plaintiffs. Because of his holding that the quitclaim deed (mortgage) was wholly void as against plaintiffs' claim, the trial judge made no determination of the exact amount of Charles' indebtedness which it secured. We are unable to determine from the record before us whether or not the amount claimed was in excess of the actual *bona fide* indebtedness of Charles to his relatives. This should be determined upon a further hearing before the trial judge. The case will be remanded for such further hearing and final determination, and decree in accordance herewith. Costs of this court to the appellants.

BUTZEL, C. J., and WIEST, POTTER, SHARPE, and FEAD, JJ., concurred with NORTH, J.