TOWNE *v.* LYNCH.

1. FRAUDULENT CONVEYANCES — CONSIDERATION — INSOLVENCY OF PRIVATE BANK.

In suit by receiver of private bank to set aside deeds of farms made by a partner to his children when bank was apparently insolvent and shortly before receivership, contributions of children to joint account used to maintain the farms and pay off father's indebtedness *held,* insufficient to create relation of debtor and creditor between them and their father so as to constitute valid consideration for respective conveyances (3 Comp. Laws 1929, § 13392 *et seq.*).

ON REHEARING.

2. SAME—FRAUD OF GRANTEES—LIENS.

Children, grantees of father, who knowingly participated in fraud upon latter's creditors, *held,* not entitled to lien upon property conveyed to them for moneys paid by them, since in such a case equity regards the title, as far as creditors are concerned, as still in the grantor.

Appeal from Hillsdale; Rathbun (George A.), J. Submitted June 14, 1935. (Docket No. 84, Calendar No. 38,437.) Decided October 11, 1935. Submitted on rehearing January 13, 1936. Decided March 2, 1936.

Bill by C. Jay Towne, receiver for Citizens Bank of North Adams, a copartnership, against Bion I. Lynch and others to set aside conveyances alleged to have been made in fraud of creditors. Decree for plaintiffs. Defendants Lynch appeal. Affirmed.

*Paul W. Chase* and *Wilbur D. Grommon,* for plaintiff.

*Wesley L. Nutten* (*Herbert J. Newman,* of counsel), for defendants.

NELSON SHARPE, J. On May 31, 1930, the defendants Bion I. Lynch and Maude A. Lynch, his wife, executed three conveyances of certain lands in the county of Hillsdale, owned by them, one to their daughter, Donna Lynch,

one to their son, George Alfred Lynch, and one to their son, J. W. Lynch, for an expressed consideration of one dollar each. About 600 acres were so conveyed. These instruments were not recorded until February 14, 1931. Bion I. Lynch was at that time, and had been for more than 10 years, the owner of an undivided interest in a private bank, known as the Citizens Bank of North Adams.

On July 24, 1930, on petition therefor, the circuit court for the county of Hillsdale appointed a temporary receiver for the bank and, on September 18, 1930, the plaintiff, C. J. Towne, was appointed permanent receiver thereof. On February 27, 1931, he filed the bill of complaint herein, alleging that the defendant Bion I. Lynch was one of the copartners of the bank; that the indebtedness of the bank was approximately $90,000, and the assets that might be collected would not exceed $50,000, and that the copartners would be called upon to contribute to the deficiency. It was also alleged therein that the conveyances made by Bion I. Lynch to his children were executed for an unlawful and fraudulent purpose, and in his prayer for relief he prayed that they may be "held to be of no effect." The defendants, in their answer, averred that the deeds were executed for a good and valuable consideration and denied that the plaintiff was entitled to the relief sought.

It is the claim of the defendants that, about the 1st day of January, 1925, the defendant Bion I. Lynch was in debt to such an amount that he feared the loss of his property; that he explained his financial condition to his children, who were then of age or about to become so, and agreed with them that, if they would turn in the surplus of their earnings to pay off his indebtedness, he would reimburse them therefor by a conveyance to each of them of an equal share—in value—of his land; that his children accepted the offer made to them and, during the years following, deposited their earnings, over and above their expenses of living, in the Citizens Bank in a joint account, which was used to maintain the farms and pay off the indebtedness of their father; that prior to the time when the deeds were executed, Donna had contributed to said account the sum of $4,446.48; J. W., the sum of $4,883.32, and George the sum of $9,954.39, and that they had also obligated themselves on a note, jointly with their father, on which there was unpaid at the time of the hearing the sum of $1,500.

The trial court found that the relation of debtor and creditor was not created by the payments made by the children into the joint account; that the arrangement made was "to pool their interests and save the property which Bion I. Lynch had originally accumulated." He entered a decree granting the relief prayed for in the bill of complaint. The defendants have appealed therefrom.

Defendants' counsel insist that the moneys paid into the joint account under the arrangement made therefor constituted sufficient and valid considerations for the execution of the deeds and further that, as the conveyances were made in pursuance of an agreement between the parties, which was performed, they are binding upon them.

The applicable sections of the fraudulent conveyance act (3 Comp. Laws 1929, § 13392 *et seq.*) were quoted at length in the opinion of Mr. Justice NORTH in *Hartford Accident & Indemnity Co.* v. *Jirasek,* 254 Mich. 131, 139, 140.

There can be no question that, at the time these deeds were executed, the owners of the bank believed that it was in a serious financial condition. Bion I. Lynch and two of the other copartners had agreed to each contribute one-third of $10,000 to relieve the situation. The other two paid in their share of it, but on the day before the deeds were executed Lynch informed one of the others that, as he had $4,000 then on deposit in the bank, he didn't think it necessary for him to contribute his share. At a later meeting, held shortly before the petition for a receiver was filed, he informed the others that he had conveyed his property to his children.

On cross-examination Bion I. Lynch testified:

"*Q.* Now, in this understanding that you had with the children, * * * if there were losses in the operation of these farms, who was bearing the loss here? *A.* They were to look after it, if there was a gain, they got the benefit from it, and if there was a loss, they—that was the only way I had of—

"*Q.* That was the understanding, was it, Mr. Lynch, that there was to be a sharing of profits and losses here? *A.* Yes, sir.

"*Q.* Whatever the profits or the losses might be in this farm venture, that there was to be a sharing of those profits and losses between the children and yourself? * * * *A.* At

the time this deal was made the children had no property and I felt at that time that I did have a substantial equity in these farms. I think I figured at that time there would be at least $18,000 equity in these farms and I was in hopes the children could pay off the indebtedness, I hoped they would make a success and clear up the debts. I supposed there would be something beyond those, and whatever that value was, the children were to have.

"*Q.* And when were they to have it? *A.* Well, at the time the deeds were drawn I—they were to have it at my death.·

"*Q.* At your death? *A.* Yes, that's what I figured.

"*Q.* That's what you figured at the time the deeds were drawn? *A.* Yes, sir; yes, sir.

"*Q.* And that's what you figured at the time the bargain was made, wasn't it, that they should have this property at your death? *A.* Or before if I saw fit.

"*Q.* If you saw fit. But when you drew the deeds you figured that they would have it at your death? *A.* Yes.
* * *

"*Q.* Well, was Mrs. Lynch to have some benefit off from these farms if you died first, up until she died? *A.* She would have had, sure.

"*Q.* She was to have her support and her care, wasn't she, Mr. Lynch? *A.* She certainly was. * * * My understanding with the children was that they were to settle my indebtedness and it was understood that I and my wife were to have a living from the property while we lived."

It seems clear that the moneys paid into the bank by Bion's sons and daughter did not create the relationship of debtor and creditor. That Bion so understood is also evidenced by a property statement signed by him, on March 13, 1930, for the purpose of securing credit. In it he listed the farms which were later included in the deeds, and stated that his assets amounted to $36,039, and his indebtedness $8,500, consisting of a real estate mortgage of $1,500 and indebtedness to banks of $7,000. This statement was witnessed by G. A. Lynch, who was then cashier in the bank. It was found among the papers in the bank but had not been used.

He had also made a financial statement on January 27, 1927, in which his liabilities were stated to be $18,900, con-

sisting of notes and mortgages. It contained no reference to any indebtedness to his children.

While the bank did not close until July 22, 1930, it is apparent that it was in an insolvent condition at the time the deeds were executed on May 31st, of that year; that they were fraudulent as to its creditors, and that the plaintiff was entitled to the relief granted him in the decree under the provision therefor in 3 Comp. Laws 1929, § 13401. See *Morse* v. *Roach,* 229 Mich. 538, and *Hartford Accident & Indemnity Co.* v. *Jirasek, supra.*

The decree is affirmed, with costs to plaintiff.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSH-NELL, and EDWARD M. SHARPE, JJ., concurred.

## ON REHEARING.

PER CURIAM. After our opinion, in this cause, reported *ante,* 161, defendants made application for a rehearing, which was granted upon one question only, namely: Whether the defendants, J. W. Lynch, Donna G. A. Lynch and George Alfred Lynch (the children of defendant Bion I. Lynch) are equitably entitled to a lien upon the properties involved in this litigation.

We pointed out in our former opinion, *ante,* 161, that the deeds given by defendant Bion I. Lynch to his three children were fraudulent as to the creditors of the Citizens Bank of North Adams, a copartnership, of which Bion I. Lynch was a partner, and that no relationship of debtor and creditor existed between the father and his children.

Counsel for the children now insists that, insofar as they are concerned, the facts involve only *constructive* fraud, and that, therefore, these defendants are entitled to a lien on the various properties described in the fraudulent deeds for moneys paid by them on behalf of their father in good faith. We are cited to decisions of this court and others throughout the country, which, it is claimed, sustain the position taken. Defendants' contention is based upon the assumed premise that the children acted in good faith and that they were not knowingly participants in the making of the respective fraudulent conveyances. The difficulty

with this contention is that the assumed premise is erroneous.

The record is replete with testimony indicating actual participation by the children in the fraud, and knowledge upon their part that the acceptance of the deeds from their father would constitute a fraud upon the creditors of the bank. In such a case a court of equity will not give its aid for the purpose of extricating the parties from the position they have voluntarily taken.

"While conveyances made in fraud of creditors are valid as between the parties themselves, they are absolutely void as to creditors, and as to them it is immaterial whether the grantee paid any consideration or not. If the purpose of both the grantor and the grantee is to defraud the grantor's creditors, the title to the land, as to creditors, is regarded in equity the same as though no conveyance had been made, and the title still stood in the grantor. The wise theory of the law is that a creditor, trusting the debtor upon the faith of his owning the land, is entitled to the first lien upon it, where the grantee has participated in the fraud of the grantor, the debtor. This is the long and well-established rule. *Sands* v. *Codwise*, 4 Johns. (N. Y.) 536 (4 Am. Dec. 305); *Shand* v. *Hanley*, 71 N. Y. 319; *Davis* v. *Leopold*, 87 N. Y. 620; *Wiley, Banks & Co.* v. *Knight*, 27 Ala. 336; *Daisy Roller Mills* v. *Ward*, 6 N. D. 317 (70 N. W. 271). In this last case will be found a valuable discussion of the subject, and a citation of authorities." *Morley Brothers* v. *Stringer*, 133 Mich. 690.

We find no reason for disturbing the decree heretofore affirmed. Plaintiff will recover costs.